REGISTRAR OF CONTRACTORS
OF
THE STATE OF ARIZONA

Robert and April Bloch,

COMPLAINANT,

v.

Valley Custom Homes LLC,
License No. 153136,

RESPONDENT.

Case No. 2016-825
2016-2867

Docket No. 2016A-825-ROC
2016A-2867-ROC

**FINAL ADMINISTRATIVE DECISION AND ORDER**

Under A.R.S. § 41-1092.08(B), the Registrar may review and accept, modify, or reject an administrative law judge's written decision. If the Registrar modifies or rejects that decision, then the Registrar must provide written justification setting forth the reasons for the modification or rejection.

**REGISTRAR'S ACCEPTANCE**

In this case, a hearing was held, and the administrative law judge issued a written decision. *See* Administrative Law Judge Decision attached. The Registrar reviewed that decision and hereby accepts it.

**CONCLUSION**

Because the Registrar has accepted the administrative law judge's decision, that decision is the final administrative decision in this case and becomes effective on **February 18, 2017**.

Dated this 9th day of January 2017.

Registrar of Contractors

/s/  *James N. Hanson*
-----------------------------------------------------
James N. Hanson
Assistant Director, Legal Department

1 of 2

1  Copy mailed via USPS First Class mail this
   9th day of January 2017 to:
2
   **Respondent**
3  Valley Custom Homes LLC
   9225 N. Lava Bluff Trl.
4  Fountain Hills, AZ 85268-5963

5  **Respondent Attorney**
   Frederick E. Davidson, Esq.
6  DAVIDSON & KAFFER PLLC
   8700 E. Pinnacle Peak Rd., Ste. 221
7  Scottsdale, AZ 85255-3541

8  **Complainant**
   Robert and April Bloch
9  4809 E. Hummingbird Ln.
   Paradise Valley, AZ 85253-2942
10
   **Complainant Attorney**
11 Denise H. Troy, Esq.
   DICKINSON WRIGHT PLLC
12 1850 N. Central Ave., Ste. 1400
   Phoenix, AZ 85004-4568
13

14 And copy electronically mailed this same date to:

15 **Office of Administrative Hearings**
   Linda Brown, Administrative Law Judge
16

17 Case No. 2016-825
         2016-2867/ck
18

19

20

21

22

23

24

25

26

2 of 2

**IN THE OFFICE OF ADMINISTRATIVE HEARINGS**

| | |
|---|---|
| Robert and April Bloch,<br><br>COMPLAINANTS,<br><br>v.<br><br>Valley Custom Homes, LLC,<br>License No: 153136<br><br>RESPONDENT. | No. 2016A-825-ROC / 2016A-2867-ROC<br><br>**ADMINISTRATIVE LAW JUDGE DECISION** |

**HEARING:** Monday, November 14, 2016 at 1:00 PM

**APPEARANCES:** Robert Bloch ("Complainant"); Denise Troy ("Attorney1" for Complainant); Stephen Klingler ("Witness1" for Complainant); Matt Gunstra ("Investigator Gunstra" for the Registrar of Contractors ("ROC")); Robert Granville Giguere ("Respondent" for Valley Custom Homes, LLC); Chad Kaffer ("Attorney2" for Respondent); and Julio Alvarado ("Witness2" for Respondent).

**ADMINISTRATIVE LAW JUDGE:** Linda Marie Brown

---

This matter is heard as a consolidated matter involving Case No. 2016A-2867-ROC and Case No. 2016A-825-ROC. Case No. 2016A-825-ROC is the root case and the matter was set by the Registrar of Contractors as a hearing to determine whether Respondent has violated the following statutory provisions, (1) Arizona Revised Statutes ("A.R.S.") § 32-1154(A)(2)[1] Departure from or disregard of plans or specifications; (2) Rule 4-9-108[2] Minimum Construction Standards in the Arizona

---

[1] A.R.S. § 32-1154(A) (2) "Departure from or disregard of plans or specifications or any building codes of the state or any political subdivision of the state in any material respect that is prejudicial to another without consent of the owner or the owner's duly authorized representative and without the consent of the person entitled to have the particular construction project or operation completed in accordance with such plans and specifications and code."

[2] A.A.C. § R4-9-108 requires a contractor to perform all work in a professional manner and in conformity with professional industry standards. For work to be performed in accordance with professional industry standards, a contractor shall use such skill, prudence, and diligence in performing and completing tasks

Office of Administrative Hearings
1400 West Washington, Suite 101
Phoenix, Arizona 85007
(602) 542-9826

Administrative Code ("A.A.C.") and thereby of A.R.S. § 32-1154 (A)(3); (3) A.R.S. § 32-1154(A)(9) Aiding or abetting a licensed or unlicensed person to evade this chapter, knowingly or recklessly combining or conspiring with a licensed or unlicensed person, allowing one's license to be used by a licensed or unlicensed person or acting as agent, partner, associate or otherwise of a licensed or unlicensed person with intent to evade this chapter; (4) A.R.S. § 32-1154 (A)(12)[3] Failure in any material respect to comply with this chapter; and A.R.S. § 32-1158(B)[4]; and (5) A.R.S. § 1154(A)(13) Knowingly entering into a contract with a contractor for work to be performed for which a license is required with a person not duly licensed in the required classification.

## FINDINGS OF FACT
### BACKGROUND AND PROCEDURE

1. In March 2000, the Arizona Registrar of Contractors ("the Registrar") issued License No. ROC153136, Class B for residential general contracting to Robert Granville Giguere.

---

undertaken that the completed work meets the standards of a similarly licensed contractor possessing ordinary skill and capacity.

[3] A.R.S. § 32-1154(A) (12) "Failure in any material respect to comply with this chapter." 1158(B): A violation of A.R.S. § 31-1158(B) "From and after December 31, 2007, any contract in the amount of more than one thousand dollars entered into between a contractor and the owner of a property to be improved shall contain in writing at least the following information."

[4] A.R.S. §32-1158(B) "From and after December 31, 2007, any contract in an amount of more than one thousand dollars entered into between a contractor and the owner of a property to be improved shall contain in writing at least the following information:
1. The name of the contractor and the contractor's business address and license number.
2. The name and mailing address of the owner and the jobsite address or legal description.
3. The date the parties entered into the contract.
4. The estimated date of completion of all work to be performed under the contract.
5. A description of the work to be performed under the contract.
6. The total dollar amount to be paid to the contractor by the owner for all work to be performed under the contract, including all applicable taxes.
7. The dollar amount of any advance deposit paid or scheduled to be paid to the contractor by the owner.
8. The dollar amount of any progress payment and the stage of construction at which the contractor will be entitled to collect progress payments during the course of construction under the contract.
9. That the property owner has the right to file a written complaint with the registrar for an alleged violation of section 32-1154, subsection A. The contract shall contain the registrar's telephone number and website address and shall state that complaints must be made within the applicable time period as set forth in section 32-1155, subsection A. The information in this paragraph must be prominently displayed in the contract in at least ten point bold type, and the contract shall be signed by the property owner and the contractor or the contractor's designated representative. This paragraph does not apply to a person who is subject to and complies with section 12-1365.

Respondent's address of record is 9225 North Lava Bluff Trail, Fountain Hills, Arizona 85268-5963.

2. Robert Bloch and April Bloch ("Complainants") hired Respondent to perform a remodel to their home located at 4809 East Hummingbird Lane in Paradise Valley, Arizona for a total cost of $280,000.00.

1. On or about March 11, 2016, Complainants filed a complaint with the Registrar of Contractors against Respondent alleging various issues, and later a second Complaint on July 25, 2016, listing additional concerns.

2. Complainants alleged the following issues (1) work proceed by general contractor by verbal proposal and no written contract was provided to Complainants; (2) project completion was Christmas 2014, and extended to April 2015, and continued through <u>December 2015, at which time the Complainant terminated the contract</u>. and costs in excess of $500,000, and belief that Respondent used subcontractors not licensed by the Registrar of Contractors; (3) four leaks in roof; (4) metal trim around house not repaired; (5) four out of seven sinks leaking; (6) water heater was not installed to code, repairs have been made to enable the Blochs to obtain a certificate of occupancy; (7) plumbing not centered in guest bedroom; (8) spacing for appliances between cabinets is insufficient. Despite some adjustments to the stone work and the cabinet work, some appliances are still not properly set; (9) electricity in kitchen island was not to code, requiring the granite previously installed on the island to be cut to allow for rewiring, and to obtain the certificate of occupancy; (10) sheet metal work, such as vents, appear to have been used on other projects; (11) sliding back door did not lock, and the doors did not slide into the wall, as per the plans and specifications. This issue had to be repaired to secure the house; (12) master bath granite vanity top was cut in such a way as to be unusable; (13) shower stall surrounds do not fit properly because the shower stalls are not level or square; (14) some areas of the home are not insulated in accordance with the plans or specifications; (15) the final square footage of the home is less than that called for in the plans and specifications; (16) the exterior stucco is

3

defective; (17) subcontractors damaged the new acrylic bathtub; (18) foam roof does not comply with manufacturer's specifications; (19) installer of the foam roof, Foam Done Right, does not appear to have a contractor's license; (20) use of unlicensed contractor to perform plumbing work; (21) install pool without the use of licensed contractors, pool pumps did not run and water would not flow properly in to the negative edge basin, electrical panel and necessary electrical circuitry had to be reworked, tile at the negative edge had to be removed and reinstalled so wall could be refloated to allow for proper drainage, pool plumbing work had to be redone to a large extent, pool still does not have suction line; (22) failed to provide accounting of billings to date, double billed on some items, including management fees and the front door; (23) instructed Blochs to pay the following individuals directly, none of whom appear to have a contractors licenses: Julio Alvarado, Fidel Sanchez, Altilano Vega, Ramiro Ceda, Gregorio Pena, and Luis Beltran; (24) Master Bath Floor not properly installed-large slope; (25) gabled roof west side of home insulation not done properly; (26) gable roof also not properly ventilated or code; and (27) I'm not 100% sure but back appears patio is off plan supposed to be stairs.

3. Complainants also filed a Complaint with the Office of the Arizona Attorney General Consumer Information and Complaints Unit which was forwarded to the Registrar of Contractors on March 11, 2016, stating the matter may fall within the jurisdiction and authority of the Registrar.

4. On March 14, 2016, the Registrar of Contractors sent a letter to Complainants requesting additional information, specifically, proof of payment; and another letter dated March 25, 2016, asking for a written explanation of what the original scope of work was including changes from the agreement that resulted in additional payments. The ROC further stated that it would need evidence that the Respondent charged more for his work than was agreed to.

4

5. On March 25, 2016, The Registrar of Contractors sent a letter to Respondent Valley Custom Homes LLC notifying them a formal complaint was filed and a jobsite inspection is scheduled for March 31, 2016, at 1:00 pm.

6. A jobsite inspection was conducted on March 31, 2016, by Investigator Gunstra. Persons in attendance were Robert Bloch, Robert Giguere, Patrick Funk, a licensed finish carpentry subcontractor and Julio Alvarado, an unlicensed person. Investigator noted that Mr. Alvarado performed superintendent functions for Respondent on this project (including collection of money). Investigator Gunstra noted other concerns stated by Complainants regarding Witness2 in his report.

7. In his report, Investigator Gunstra noted that the project scope was a full remodel and the contract was completely verbal but over $500,000 in value, and that many of the allegedly substandard workmanship items have been corrected by others hired by Complainants. He further stated, "This is noted below under each relevant item and I will decline to cite them per A.R.S. § 32-1155(C)[5]. Complainant may have a good argument as to why he had to hire others after firing Respondent but that argument may be best made in a court of competent jurisdiction."

8. On March 31, 2016, Investigator Gunstra obtained photographs during this jobsite inspection which were uploaded into Case View Documents File labeled "Insp Formal Complaint Miscellaneous1 and Insp Formal Complaint Miscellaneous2[6]". Of the 25 complaint items listed on the Jobsite Inspection Notes[7], eight (3) were substantiated as referenced by number they appear in the Jobsite Inspection Notes:

**Complaint Item 1**: VCH never provided a written contract to the Blochs

---

[5] The registrar shall not issue a citation for failure to perform work in a professional and workmanlike manner or in accordance with any applicable building codes and professional industry standards if either:
1. The contractor is not provided an opportunity to inspect the work within fifteen days after receiving a written notice from the registrar.
2. The contractor's work has been subject to neglect, modification or abnormal use.
[6] See ProLaw.
[7] See ProLaw.

<u>Investigator's Observation</u>: There is no written contract between the parties on a full remodel job that exceeded $500,000 in cost. This is violation, A.R.S. § 32-1154; A12 namely 32-1158.

**Complaint Item 2**: Despite demands, VCH has failed and refused to provide a list identifying each and every subcontractor on the Project.[8] . . .Julio Alvardo, Fidel Sanchez, Altilano Vega, Ramiro Ceda, Gregorio Pena, and Luis Beltran.

<u>Investigator's Observation</u>: At the inspection, I asked Respondent directly about the names listed above. Respondent admitted that at least one subcontractor was unlicensed . . . NOTE: All unlicensed persons have been given to ROC Unlicensed Investigations section for investigation[9].

**Governing Rule**: Code A.R.S. § 32-1154; A9 and A13.

**Complaint Item 3**: There are four leaks in the roof, which have not yet been repaired.

<u>Investigator's Observation</u>: Investigator made several comments regarding his observations including that he could not perform a leak test to substantiate whether the roof is currently leaking and that Complainant stated it has not leaked since Respondent's repairs. However, he noted there are workmanship issues with Respondent (or his subcontractor's) work, including observing areas with broken roof tiles or mortar end cap. Raised seam metal siding does not appear to be installed in such a way as to prevent water from getting behind it at the top (improper flashing). Further that "unless Respondent can provide a document from the manufacturer saying this application is ok I am citing poor work for improper installation". Additionally, noted one section of the ridge tile is different color/style than the rest and "without sufficient reason it is poor work to install a non-matching product in one section".

**Governing Rule**: Workmanship Rule R4-9-108.

**Complaint Item 4**: The metal trim around the house has not been repaired.

<u>Investigator's Observation</u>: This item is pertaining to the raised seam metal siding used on the upper portion of the roof. It does not appear to be weather tight or properly flashed so as to prevent water from getting behind it. I consider this improper installation of this material. In addition, Complainant pointed to the rear patio roof structure not having the metal siding on the side portions as shown on the plan. I observed the plans on site and did see they call for siding in these locations. Respondent did not follow plan. A.R.S. § 32-1154; A2.

---

[8] See ProLaw for complete detail under Complaint Item 2.
[9] See ProLaw for detailed information provided under Investigator's Observation,

6

**Complaint Item 14**: Some areas of the home are not insulated in accordance with the plans and specifications.

Investigator's Observation: I observed on the plans at the home it calls for the garage ceiling to be insulated R-38. It was explained that the garage was intact and not part of the demolition. I entered the attic over the garage and observed batt insulation that appeared to be old. There were areas around the access where the insulation was missing but I have no knowledge of who removed it. A large portion of the attic has decking that covers the truss cords and I could not see below them. However, it does not appear the attic in this area is fully and properly insulated. Workmanship Rule R4-9-108.

**Complaint Item 19**: The foam roof does not comply with manufacturer's specifications.

Investigator's Observation: In Complainants complaint he provided photos from an individual he brought in to inspect the roof. In those photos it shows at least three cores were taken from the foam roof. They appear to show the roof foam thickness is less than 1 in. The cores are still at the residence and I observed them. There are approx. 1/2" in thickness. This does not meet a minimum workmanship standard which requires a minimum thickness of 1". Workmanship Rule: Minimum standard for Foam Roofs.

**Complaint Item 21:** VCH installed the pool with its own forces. It does not have a pool contracting license.

Investigator's Observation: This item has been addressed under Complaint Item #2.

**Complaint Item 23:** Neither Mr. Giguere nor Julio Alvarado ever mentioned active termites. Nor did we ever receive any documentation that they had the home treated. We have been billed for a termite treatment and maybe it happened but clearly it did not work. Nor do we have any documentation. They painted over a trail.

Investigator's Observation: I did observe at least one termite trail on the lower foundation of the home. Because this area of foundation is pre-existing I do not know if this is an old trail or not. I am unable to determine if there are active termites or not. However, it is not proper workmanship to paint over a termite trail. Workmanship Rule: R4-9-108.

Under Complaint Item 20, an issue was raised surrounding accounting practices and sums paid to date. Investigator Gunstra noted that the ROC does not regulate design. In addition, because the contract is verbal and a cost plus format I do not have a sufficient baseline to substantiate overcharging. This is a money dispute better handled in a different venue.

9. On April 4, 2016, Respondent entered his response to Case No. 2016A-825-ROC, submitting copies of information requested: amounts paid by Mr. Bloch, VCH expenditures, and sub-contractor information. The expenditures from August 2014 to January 2016 reflect a total amount of $458,073.54. A full list of subcontractors was provided each listing an associated license number with the exception of Designer Mark Walth, Electrical Atilano Vega, Engineering Geoff Markowski and Mart Sheard, Temporary facilities Jackpot Sanitation dba Cactus Industries, Termite Pretreat Terminex Int'l dba SOS Exterminating, Translator & Asst Julio Alvarado, and Trash removal Ramiro Ceda. Respondent explained that the remodel turned out to be close to a complete tear down and rebuild of 4000 square feet and that a permit was issued in November 2014 to begin the project. The letter also stated that major changes were requested and authorized by Bloch. In June 2015 he wanted to add a pool to the project, and in November 2015 a courtyard both requiring additional planning, plans, permits and inspections.

10. Respondent asserted in his letter that Complainant stated he never received any invoices and provided in his response the nineteen invoices issued on a cost plus basis beginning September 18, 2104 and ending December 15, 2015. Respondent also asserted that Complainant represented himself as a general contractor to vendors and compromised himself and offered cash directly to contractors, suppliers and vendors.

11. Respondent provided copies of text messages received from Complainant alleging threats made to subcontractors.

12. No Directive was issued because the contract was terminated on or around December 2015. A citation was issued on April 20, 2016, citing that during the inspection, Investigator Gunstra confirmed that at least some of the charges relating to Respondent's work appeared to be valid. The formal charges are as follows: **Charge 1**: violation of A.R.S. § 32-1154(A)(2); **Charge 2**: violation of Rule 4-9-108, thereby A.R.S.

8

§ 32-1154(A)(3); **Charge 3**: violate of A.R.S. § 32-1154(A)(9); **Charge 4**: A.R.S. § 32-1154(A)(12) 1158(B); and **Charge 5**: A.R.S. § 32-1154(A)(13).

13. On May 5, 2016, Attorney2, on behalf of Respondent submitted its Written Answer to Citation and Complaint and Request for Settlement Conference. In its answer, denied Charges 1 through 5 cited in the Citation of April 20, 2016.

14. A second Complaint was filed on or about July 25, 2016, and consolidated herein. The Registrar of Contractors sent a letter to Respondent on August 12, 2016, noticing alleged supplemental issues surrounding workmanship items. A second jobsite inspection was scheduled on August 25, 2016, at 3:00 pm.

15. Investigator Gunstra noted that both Complainant and Respondent were present at the jobsite inspection. Photographs were uploaded into Case View Documents File labeled "Insp Formal Complaint Miscellaneous1, Insp Formal Complaint Miscellaneous2, and Insp Formal Complaint Miscellaneous3[10]". Because the contract was terminated, the Investigator noted that no Directive will issue. Of the six (60 complaint items listed on the Jobsite Inspection Notes[11], four (4) were substantiated as referenced by number they appear in the Jobsite Inspection Notes:

**Complaint Item 1:** Master bath floor not properly installed – large slope.

Investigator's Observation: I asked and Respondent confirmed that they poured a new slab in this area of the home. Complainant hired another company who evaluated the master bath floor and their report, which I read on site, concluded the floor is out of level significantly. I could visibly see a hump in the middle of the floor and a significant drop towards the tub. I used my 4' level centered on the high spot and it was uneven by approx.. 1/2" x 2'. I used my level with one end on the high spot and extended towards the tub. The floor is unlevel by over ¾" in 4' and even more if measured over a longer distance. This is poor work and does not meet and ROC standard. Workmanship Rule: ROC Standard for Concrete #10 and #11.

**Complaint Item 2:** Gabled roof west side of home insulation not done properly or code.

---
[10] See ProLaw.
[11] See ProLaw.

9

Investigator's Observation: Firstly I noticed there is no attic access to this area of the home so I could not access this area to inspect the ceiling insulation. Building code requires attic space over 30" in height and 30 s.f. in areas to have access. This appears to be a code violation. In at least one of the bedrooms it felt warm compared to the rest of the house. Complainant used a laser temperature tool to measure the ceiling temperature. It read in the high 80s in one room. Tis may not be conclusive but may be supportive of the rest of the evidence.

Complainant showed me photos provided by a company he hired to do energy testing in his home. They are thermal imaging shots of the ceiling over the three bedroom areas in the home. They appear t show high temps in specific spot of the ceiling which may indicate insufficient or lack of insulation. Considering this information and the lack of an access to verify I believe it is a violation of ROC standards. Code: IRC 807; required access.

**Complaint Item 3:** Gable roof also not properly ventilated per code.

Investigator's Observation: I observed the gable truss roof over the three front bedrooms does not have any soffit or roof ventilation. By code it is required to have ventilation. It has batt insulation in the ceiling according to Respondent. I reviewed the plans and they call for a spray foam barrier on the underside of the roof decking and a conditioned attic which would not require ventilation. For whatever reason the area was not built to plan in this way and does not currently comply. Substantiated. Code: IRC R806.1.

**Complaint Item 5:** Flooding and drainage issues – garage is flooding. VCH charged me thousand of dollars for grading. There are no receipts in the subpeoned [sic] documents as to what/who performed this work.

Investigator's Observation: During this inspection I observed that the driveway runs downhill towards the garage until it meets the garage apron (slab). There is a 1 ½" strip drain at this point. Complainant has put down sandbags here to prevent water entry.

During a previous visit to Complainants house it was raining and the front of Complainants garage was flooded. It appears the driveway is not properly drained away to prevent water from entering the garage. It is uphill from the home. The channel drain installed against the garage apron is not large enough or drained well enough. Poor work substantiated.

**Governing Rule:** Workmanship Rule R4-9-108; water from exterior should not drain into the garage.

16. On August 29, 2016, the Registrar of Contractors issued a Citation against Respondent citing **Charge 1**, a violation of Rule 4-9-108 titled Minimum Construction Standards, in the Arizona Administrative Code, and thereby of A.R.S. 32-1154(A)(3)[12].

17. On September 13, 2016, Complainants requested an Informal Settlement Conference. A Settlement Conference was set for October 4, 2016 at 2:00pm.

18. On September 30, 2016, Complainants requested that the Settlement Conference be vacated. An Order granting the request was entered the same day.

19. An evidentiary hearing was scheduled at the Office of Administrative Hearings ("OAH"), an independent state agency, for November 14, 2016, at 1:00 p.m. at the OAH. The Registrar mailed a copy of the Notice of Hearing to Complainant at the address on its complaint and to Respondent at its address of record.

## **HEARING EVIDENCE.**

20. Both Complainants and Respondent's attorneys provided opening statements.

21. Investigator Gunstra testified in narrative format that reinforced his findings as written in his Jobsite Inspection Notes of March 31, 2016, and August 25, 2016.

22. Investigator Gunstra further testified that he substantiated 8 out of 25 complaints and that because the Contract was terminated, he did not issue a Directive but sent the matter to legal, and that he handled the addendum complaint in the same manner.

23. He also testified that the burden to verify licensing of subcontractors falls on the General Contractor.

---

[12] See ProLaw Rch423 CitationMultipleChargesincl.Workmanship.rtf

11

24. Steve Klingler, a forensic consultant of The Klingler Group, LLC, (Witness2) provided testimony in regards to the workmanship issues involving the roof. He testified that the roof lacked a drip edge metal, the workmanship did not provide for ventilation as required by Code, the shake tile was not uniform in color and the gutter was low slope for conditions. Mr. Klingler's curriculum vitae along with photos taken by him in June 2016 were entered as Exhibits C1 and C2.[13]

25. Complainant1 testified that he asked Respondent for a written Contract, and in fact, Respondent provided a text message in his April 4, 2016, response letter wherein Complainant asked on Nov 17, among other things, ". . . did we ever sign a contract? I'm sure we must have. I have absolutely. I no records. Again not your fault but I need to have this things for all sorts of reasons particularly my taxes."[14] No written contract was produced.

26. Complainant1 also restated several of his concerns surrounding workmanship and concern that the roof leaf may led to mold remediation.

27. Respondent's Attorney2 asked Complainant1 if he paid subcontractors directly, to which he replied, yes.

28. He was also asked if he told Respondent that subcontractors were unlicensed to which he replied, no.

29. Respondent testified he was referred to Complainant and that the contract was based on a verbal proposal and that there were no written change orders. When asked how long he has been in business, he replied 16 years, and that he has built around 30-40 custom homes. He testified that Witness2 is hired translator and also picks up supplies for an hourly rate of $15.00.

30. He testified that he was not aware that any of the subcontractors were unlicensed. However, in his written answer received by the Registrar on or about May 5,

---
[13] See ProLaw Exhibits 11/14/2016
[14] See ProLaw 05/06/2016 IntakeAdditionalDocsSubmitted2.pdf

12

2015, he stated "Respondent is unaware if the contractors hired by the Complainants were licensed or unlicensed, with the exception of the electrician."[15].

31. He testified that it is possible that the drain could have been buried by the landscapers which would result in poor drainage.

32. He testified that the garage was not included in the plans. Also there were several changes throughout the project such as adding a pool and installing higher ceilings.

33. Witness2, Julio Alvardo, testified that his functions at the jobsite was to call people for supplies, report laborers, and translate and that he served more as an assistant to Respondent. He stated that Complainant was solely responsible for selection of the products used on the project and that he was at times paid in cash by Complainant.

34. His hours per week ranged from 25-40. When asked if he is paid as an employee by Respondent, he stated no.

35. Complainants Attorney1 entered into evidence a copy of a check made payable to Julio Alvarado from Valley Custom Homes LLC dated 09/04/2015 in the amount of $1,150.00 with the memo: Waterheater,[16] and a job ticket, department Electrical, dated 05/28/2015 with the noted extras requested by Julio $675.00.[17]

36. In closing, Complainants Attorney1 stated they are seeking sanctions.

37. Respondent's Attorney2 requested no sanctions be imposed, and that Complainant failed to prove he had "knowledge" as set forth under Charge 5, or at a minimum that Complainant had knowledge.

## CONCLUSIONS OF LAW

---

[15] See ProLaw 495061.pdf (LgCitation1.pdf)
[16] See Exhibits 11/14/2016 (paystubs to Miguel Romero and Julio Alvardo (C6)).
[17] See Exhibits 11/14/2016 (Atilano Invoice (C7)).

13

1. This matter is within the jurisdiction of the Registrar of Contractors pursuant to A.R.S. §§ 32-1104(A)(4), 32-1154(B) and 32-1156.

2. The Citations issued by the Registrar of Contractors in this matter alleged potential violations of (1) A.R.S. § 32-1154(A)(2) Departure from or disregard of plans or specifications; (2) Rule 4-9-108 Minimum Construction Standards in the Arizona Administrative Code ("A.A.C.") and thereby of A.R.S. § 32-1154 (A)(3); (3) A.R.S. § 32-1154(A)(9) Aiding or abetting a licensed or unlicensed person to evade this chapter, knowingly or recklessly combining or conspiring with a licensed or unlicensed person, allowing one's license to be used by a licensed or unlicensed person or acting as agent, partner, associate or otherwise of a licensed or unlicensed person with intent to evade this chapter; (4) A.R.S. § 32-1154 (A)(12) Failure in any material respect to comply with this chapter; and A.R.S. § 32-1158(B); and (5) A.R.S. § 1154(A)(13) Knowingly entering into a contract with a contractor for work to be performed for which a license is required with a person not duly licensed in the required classification.

3. Complainants bear the burden of proof to establish Respondent's statutory violation by a preponderance of the evidence.[18] "A preponderance of the evidence is such proof as convinces the trier of fact that the contention is more probably true than not."[19]

4. A.R.S. § 32-1154(A)(2) provides grounds for suspension or revocation of a contractor's license for departure from or disregard of plans, specifications or building codes "in any material respect that is prejudicial to another" without consent of the owner or his or her representative

5. Regarding **Charge 1** of the Citation, because there was no written contract, Complainants asked for a copy of a written contract, and General Contractor is charged with knowing the requirements to provide written contract, the Administrative Law Judge cannot ascertain that Respondent did violate A.R.S. § 32-1154(A)(2) by

---

[18] See A.R.S. § 41-1092.07(G)(2); A.A.C. R2-19-119(A) And A.A.C. R2-19-119(B)(1); See Also Vazanno V. Superior Court, 74 Ariz. 369, 372, 249 P.2d 837 (1952).
[19] MORRIS K. UDALL, ARIZONA LAW OF EVIDENCE § 5 (1960).

failing to obtain a written or signed change order since there is not reference, However, the ALJ relies on Investigator Gunstra's observations listed on 03/31/2016 as Complaint Item 4 and on 08/25/2016, listed as Complaint Item 3. Respondent offered no evidence that any form of written contract existed or any reference to any plans or specifications that would indicated consent other than asserting that all changes were done by verbal agreement. In light of Investigator Gunstra's testimony, Complainants established the deviation was material or that it was prejudicial to them. Therefore, Complainants have established a violation of A.R.S. § 32-1154(A)(2) regarding the roof and ventilation of the roof.

6. Regarding **Charge 2**, listed on the Citation dates April 20, 2016, and **Charge 1**, listed on Citation dated August 29, 2016, Complainant established a violation of A.A.C. R4-9-108, and thereby of A.R.S. § 32-1154(A)(3).[20] Complainant meets its burden of proof that the items listed and substantiated from the jobsite inspection report of 03/31/2016, specifically Complaint Items 3, 14, 19, and 23 and jobsite inspection report of 08/25/2016, Complaint Items 1, 2, 3,and 5, as it relates to workmanship issues surrounding the roof, metal trim around the house, insulation in accordance with plans and specification, foam roof thickness, unlevel master bath floor, and painting over termite trails to be a violation of the workmanship rule.

7. Respondents offered no material evidence to establish that the broken and unmatched roof tiles, unlevel master bath floor, fireplace/chimney roof flashing and gap, insulation thickness and lack thereof in various parts of the home, lack of ventilation per code, and the drainage issue surrounding the garage were justified.

8. The evidence established that Respondent's work on the project included numerous workmanship issues. Therefore, the Registrar established that Respondent did not perform the work in a workmanship manner in violation of A.R.S. § 32-1154(A)(3), namely A.A.C. R4-9-108.

---

[20] A.A.C. R4-9-108 requires that "[a]ll work shall be performed in a professional and workmanlike manner" and that "[a]ll work shall be performed in accordance with any applicable building codes and professional industry standards." A.R.S. § 32-1154(A)(3) includes among the grounds for suspension, revocation, or other disciplinary action against a contractor's license, "[v]iolation of any rule adopted by the registrar."

15

9. Regarding **Charge 3 and 5**, the Administrative Law Judge concludes, based upon the weight of the credible evidence of record that grounds exist to impose discipline against Respondent's license. The evidence established that Respondent aided and abetted unlicensed contractors and admittedly having knowledge that work on the project was performed by unlicensed contractors, specifically, the electrician. Additionally, while the Respondent attempted to mitigate responsibility by stating Complainant had knowledge and paid cash, this is irrelevant since the burden to verify persons are properly licensed falls on the General Contractor. Therefore, the Registrar established that Respondent did violate the statutory provisions as set forth in its Citation.

10. The Administrative Law Judge finds that Respondent failed to meet the requirements set forth under **Charge 4** for failure to provided Complainant with a written contract for work performed that is greater than $1,000.00. In this instance, the initial amount agreed to for this project was $280,000, which is <u>substantially</u>[21] more than the minimum requirements set forth under the statute. Therefore, a violation has been found as Respondent failed to submit to the requirements as set forth under A.R.S. §§ 32-1154(A)(12) and 32-1158(B).

11. The Registrar of Contractors may consider the prior record of a contractor in any disciplinary proceeding. A.A.C. R4-9-117. Administrative notice is taken of the Registrar of Contractors website. As of the time of this recommendation, Respondent's license was in good standing.

12. The Administrative Law Judge concludes, based upon the undisputable credible testimony that grounds exist to impose against Respondent's license.

## RECOMMENDED ORDER

Based on the foregoing, it is recommended that on the effective date of the Order, the Registrar shall revoke Valley Custom Homes LLC License No: 153136.

---

[21] *Emphasis added*

16

*In the event of certification of this Administrative Law Judge Decision by the Director of the Office of Administrative Hearings, the effective date of the Order will be 40 days from the date of the certification*

Done this day, December 5, 2016.

/s/  Linda Marie Brown
Administrative Law Judge

Transmitted electronically to:

Jeffrey Fleetham, Director
Registrar of Contractors

Done this day, December 5, 2016.

/s/ Linda Brown
Administrative Law Judge

Transmitted electronically to:

Jeffrey Fleetham, Director
Registrar of Contractors